# Bromberg v. Bates.

*Bill in Equity to remove Administration of Decedent's Estate from Probate into Chancery Court.*

1. *Bill to remove administration into chancery; introduction of matters in detail.*—While in bills for the removal of the administration of a decedent's estate from the probate into the chancery court, it is not necessary to introduce details of the administration for contestation and adjustment, still ordinary matters of detail may, within reasonable limitations, be brought forward in such bills, with propriety, for special contestation and determination upon pleadings and

[Bromberg v. Bates.]

proof, before the final settlement; and the complainants in such a bill are entitled to a decree on such of the contested points as are sustained by the proof, notwithstanding there may be a failure of proof as to the others.

2. *Gifts causa mortis; when not shown to have been made.*—On an issue formed as to whether a testatrix died without disposing of certain bank stock and a certain mortgage indebtness, which were not included in her will, the executor testified that at the time of her death, the bank stock stood in his name, as her agent, and that the testatrix gave this stock to him, while a devisee under the will testified that just a short time before her death the testatrix gave said stock to her. As to the mortgage debt, the mortgagor, who was shown to have been an intimate friend of the testatrix, testified that before her death the testatrix surrendered the mortgage to her, the mortgagor, and the executor testified to the same fact; while the devisee who claimed the bank stock, testified that the testatrix gave her the mortgage just before her death. *Held*: That there were shown no gifts *causa mortis* of this property, and that as to such property the testatrix died intestate, leaving it to be inherited by her heirs at law.

3. *Executors; within the power of the chancellor to require bond.*—It is within the power of a chancellor, his court having jurisdiction of a decedent's estate, to require an executor to give a bond notwithstanding the will of his testator especially exempts him therefrom; and when it is shown that because of the relation existing between the executor and certain devisees under the will, and by reason of the fact that the executor claims some of the testator's property, which was not disposed by the will and which he did not include in his inventory, and on account of his omission of other property which belonged to the testator's estate, from the inventory thereof, the interests of the testator's heirs at law, whose rights to the property not included in the will are involved, are not safe without a good and sufficient bond, the chancellor rightfully exercises his power in requiring such executor to give a bond conditioned as required by law with good and sufficient sureties.

4. *Equitable conversion; what necessary to constitute it.*—To constitute an equitable conversion there must exist in some beneficiary a fixed, irrevocable legal right to have the investment or disposition made, and an irrevocable power and duty in the person charged with making it.

5. *Same; when not shown to exist; devise under a will.*—Where a testatrix, during her life, authorized and instructed her business agent to invest the proceeds from the sale of certain lands in Alabama State bonds, which proceeds came into his hands before her death, there is in such instructions no element of an equitable conversion of the proceeds of said land into Alabama bonds; and if after the death of testatrix and his appointment as executor of her estate under her will, such business agent invests such proceeds, as formerly directed, in Alabama bonds, such bonds will not pass to a beneficiary of the will

under a bequest to him of "whatever Alabama State bonds I may have remaining at the time of my death;" but as to the proceeds thus invested in the bonds the testatrix died intestate, if not otherwise disposed of in her will.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

This suit was begun on March 28th, 1892, by a bill being filed in the chancery court of Mobile county by the appellees, Theodore C. Bates and others, against the appellants, Frederick G. Bromberg, individually and as executor of the estate of Miss Susan F. Rouse, deceased, Elizabeth G. Zadek and Henry Alexander, and also against other defendants who do not appeal, or assign errors, namely, Mollie, Nathan and Susan Alexander, the children, and Mary Alexander, the wife, of the appellant, Henry Alexander.

On the present appeal, the appellants assign as errors and seek to have the court pass upon the ruling of the chancellor upon the demurrers of the defendants which were filed to the bill as amended, and which were ruled upon by this court on a former appeal, as is shown by the report of the case in 98 Ala. 621. It is, not, therefore, necessary to set out the facts pertaining to the decree of the chancellor upon the demurrers, or to do more than to refer to the former report of the case.

The bill alleges that the complainants are first cousins and the heirs and next of kin to Miss Susan F. Rouse, who died in the city of Mobile on or about September 7th, 1891, leaving a last will and testament, but also leaving certain property not disposed of thereby, namely, a family Bible; fourteen shares of the capital stock of the Peoples Bank of Mobile, of the par value of fourteen hundred dollars; an unpaid mortgage execution by the defendant and appellant, Elizabeth G. Zadek and E. O. Zadek, her husband, upon certain property owned by the said Elizabeth Zadek; a lot on Maryland Street; more than $8,500 in money realized from the sale of certain property, known and designated as "Hollinger's Island;" and certain stock in the Cedral Mining Company; and that as to all of this property the said Susan F. Rouse died intestate. The bill then alleges that by the will of the said Susan F. Rouse the appellant, Frederick G. Bromberg, was appointed, and has since qualified as, the executor of her last will and testament

without bond ; that he has invested the money left by Miss Rouse in Alabama bonds, and is insisting that these bonds belong to Henry Alexander, to whom the testator devised only "whatever Alabama bonds I may have remaining at the time of my death, now amounting to seven in number ;" and that the said Bromberg claims to own the said Peoples Bank stock, either individually or as the agent of some one ; and that he or some of the other defendants also claim to own the other property not mentioned in the will of the testatrix. The bill then further avers that the said Bromberg, as executor, had filed in the probate court an inventory, from which all of the property above mentioned was entirely omitted. And then the bill proceeds : "Complainants show unto your honor that by reason of the relationship of the said Frederick G. Bromberg to the other defendants in said cause, and by reason of the fact that he has failed to include in said inventory such family Bible, which is of great importance to complainants, and has wholly omitted from the said inventory said mortgage by his sister Mrs. Elizabeth G. Zadek to the said Susan F. Rouse, and said capital stock in the Peoples Bank, which, as complainants are informed and believe, and upon such information and belief state, now stands in the name of said Frederick G. Bromberg as agent of some person unknown to complainants ; and by reason of the fact that the said Frederick G. Bromberg wholly failed to mention in said inventory the said sum of $8,500 and more, in money, left by her at the time of her death, and did after the death of the said Susan F. Rouse, invest such money, without authority and before said will of said Susan F. Rouse, deceased, was admitted to probate, and before said Frederick G. Bromberg was appointed or qualified as executor under said will, in Alabama bond, so as to give the same the appearance of being the property, under the will, of the said Henry Alexander, complainants show unto your honor that their interests in said estate are not safe in the hands of the said Frederick G. Bromberg, unless and until he is required to give a good and sufficient bond for the performance of his executorship."

The prayer of the bill for relief is as follows : "Complainants further pray that your honor will cause the administration of said estate to be removed into this

honorable court forthwith, and will require the further administration of said estate to be had in'this honorable court, and that your honer will ascertain and decree the several items of the property hereinbefore mentioned, and the proceeds thereof, to belong to the said estate of said Susan F. Rouse, and will cause said executor to amend his inventory so as to set out said property therein, and will cancel and set aside any pretended conveyance of said property or the proceeds thereof that may be claimed to have been made during the lifetime of the said Susan F. Rouse, and will require the said Frederick G. Bromberg, executor aforesaid, to give bond in proper amount, with sufficient sureties, for the faithful administration of said estate, and will ascertain and determine the rights of the complainants as the next of kin and heirs in law of the said Susan F. Rouse, in and to the property above set forth as not having been disposed of by said will, including the Alabama bonds which have been purchased with the money belonging to the estate of the said Susan F. Rouse at the time of her death as above set forth ; and will, at a proper time, cause said property and bonds to be distributed as the rights of the complainants shall appear, and will grant to complainants such other or further relief as they may be entitled to, the premises considered, and as in duty bound, they will ever pray, &c.''

The answers of the several defendants put the complainants to proof of their relationship with the said Susan F. Rouse ; but there was no controversy as to her death, residence and ownership of the property in controversy at the time of her death. The will was attached to the bill as an exhibit, and exclusive of the prefactory declarations was as follows :

"Item First. It is my will that all my just debts, funeral expenses and expenses of administration be paid out of my personal estate.

"Item Second. I give and devise to Mary E. Crocker, widow, of Mobile, Alabama, on account of her long and faithful service to me for more than nineteen years in my household, the house in which I now reside at the southeast corner of Claiborne and St. Francis streets, Mobile, Alabama, and also give and bequeath to her the front parlor set of furniture in said house ; also one-half of my china ware, and of my dresses and other clothing,

except one white cashmere shawl, which I hereby give to Mrs. Alexander, wife of Henry Alexander. I also give said Mary E. Crocker the black marble-top table in the back parlor of my house in the centre.

"Item Third. I give and bequeath to Mrs. Alexander, wife of Henry Alexander, both of whom are old and valued friends to me, one-half dozen large silver spoons, one-half dozen small silver spoons, one-half dozen large silver forks, one-half dozen small silver forks, and one-half dozen silver coffee spoons, and one-half of all my china ware, and all gold spoons I have.

"Item Fourth. I give and bequeath to said Henry Alexander whatever Alabama State bonds I may have remaining at the time of my death, now amounting to seven in number, of one thousand dollars each, and not used by my executor in the payment of my debts, funeral expenses and expenses of administration.

"Item Fifth. I give and bequeath to Mollie, Nathan and Susie, children of Henry Alexander, the mortgage deed and note I hold against P. D. Barker and wife for four thousand dollars. Should said mortgage debt be paid before this will takes effect, I give said named three children four thousand dollars to be divided between them share and share alike. Said Nathan Alexander is named after my deceased half brother, Nathan Whiting, and said Susan is named for myself. I give to said Mollie Alexander also one-half of all my dresses and clothing, the other half being heretofore given to said Mary E. Crocker.

"Item Sixth. I give the painting in the front parlor representing 'Hagar in the Wilderness,' to my friend, Elizabeth Zadek.

"Item Seventh. I give nothing to my relatives in the North, because they are perfect strangers to me in whom I have no interest, and none of the property I am disposing of by this will was in any way derived from them.

"Item Eighth. I nominate and constitute Frederick G. Bromberg as the executor of this my last will and testament, and empower him to act without bond as such. I also empower him to make all divisions of personal property provided for in this will and also to sell any real estate undisposed of when the same goes into effect, and not herein devised, at public or private sale

[Bromberg v. Bates.]

for cash without any order of court first obtained, and to make deeds to such lands to the purchasers thereof.

"Item Ninth. I give and bequeath to Mollie Alexander, aforesaid, the oil portrait of my brother, Nathan Whiting, deceased.

"Item Tenth. I give nothing to my family connections in this State, because they are all well off.

"Item Eleventh. I give and bequeath to said Mary E. Crocker and Mrs. Alexander, wife of Henry Alexander, the remainder of my furniture and kitchen ware, not heretofore disposed of herein, equally divided between them by said executor or his successor.

"Item Twelfth. At this moment I have not decided what further disposition to make of the property not herein disposed of, viz., The People's Bank stock, Hollinger's Island, the lot on Maryland Street and the Zadek mortgage; and I reserve the further disposition of such property and other not disposed of herein to be made by codicil to this will hereafter."

It was shown that Frederick G. Bromberg qualified and entered upon the duties of executor under the will of Susan F. Rouse, and took possession of all the property belonging to her estate. The allegations of the bill in reference to his omitting to include in the inventory filed by him in the probate office of the assets of the said estate certain portions of the assets of the estate, were shown to be true.

The complainants introduced evidence tending to show their relationship with Susan F. Rouse, and that they were the children of the sister of said Susan's mother; that during the life of the mother of complainants, she carried on a correspondence with Susan's mother, and after the death of the latter, the correspondence was carried on by the half brother of said Susan F. Rouse, Nathan Whiting. The defendants introduced evidence tending to show that their testatrix repudiated any relation with the complainant, Theodore C. Bates, or with any of the other complainants.

In their several answers to the bill, the defendants averred that in reference to the personal property which was not included in the inventory of Bromberg, such property was disposed of by gifts *causa mortis* made by the testatrix while on her death bed; that just before Susan F. Rouse lost consciousness she delivered to Mol-

[Bromberg v. Bates.]

lie Alexander her keys, which were to her different apartments, and her bank vault, and told her that they were all hers, and that she must deliver the keys to Mr. Bromberg, and he knew what to do with them. The answer of Mr. Bromberg averred that the delivery of the keys was for him, and was intended as a gift *causa mortis* to him by the testatrix.

As to the People's Bank stock, Mr. Bromberg testified that at the time of the death of said Susan F. Rouse fourteen shares of said stock stood in his name as agent for said Susan, and that these shares were of the par value of one hundred dollars. Miss Mollie Alexander alleged in her answer, and so testified, that this bank stock belonged to her, and that the testatrix gave it to her a short time before her death; while Mr. Bromberg testified that the testatrix gave it to him. As to the Zadek mortgage, the evidence showed that said mortgage had never been paid, and Mollie Alexander averred in her answer and testified that Susan F. Rouse gave the mortgage to her before her death; while Mrs. Zadek claimed that the mortgage had been surrendered to her by the testatrix, and both she and Mr. Bromberg testified to this fact.

As to the money alleged to have been derived from the sale of Hollinger's Island, it was shown that between the time of the execution of her will and her death Susan F. Rouse sold said island for ten thousand dollars; that a check for the purchase price was delivered to Mr. Bromberg, who was the business agent of Miss Rouse; that Miss Rouse had instructed Mr. Bromberg, pending the negotiation of the sale of said island, to invest the proceeds from the sale in Alabama State bonds; that the night after the delivery of the check for the purchase money to him, Mr. Bromberg left the city of Mobile for a summer's rest, and was gone until the day of, but after, the death of Miss Susan F. Rouse; that the check was deposited with the bank upon which it was drawn, and upon his return to Mobile after the death of Miss Rouse, but before qualifying as executor under the will, Mr. Bromberg invested said money in Alabama bonds, and had possession of said bonds at the time of filing the present bill, and at the hearing of the cause.

So far as the lot on Maryland Street and the Cedral

Mining Co. stock are concerned, the evidence showed that they were the property of Miss Rouse at the time of her death, and neither of the defendants claimed any interest therein. Under the opinion on the present appeal it is not deemed necessary to set out the facts of the case in further detail.

On the final submission of the cause, the chancellor rendered the following decree: "This cause having been submitted upon the pleadings and proof and upon the argument of counsel, it is considered, ordered, adjudged and decreed that complainants are entitled to relief therein, and that this court take jurisdiction of the administration of the estate of Susan F. Rouse, deceased, and that the administration of said estate be, and the same is hereby, removed into this court, to be by it administered, and that the said executor cause to be filed in this court, within thirty days of this decree, a full and complete transcript of the proceedings had in the probate court of Mobile county in the matter of the probate of the last will and testament of the said Susan F. Rouse, deceased, and of the administration of her estate in said court.

"It is further considered, ordered, adjudged and decreed that at the time of her death the said Susan F. Rouse had more than eighty-five hundred dollars in money, the proceeds of the sale of Hollinger's Island, which money went into the hands of Frederick G. Bromberg, executor of the estate of said Susan F. Rouse, deceased, and that at the time of her death she also had fourteen shares of the capital stock of the Peoples Savings Bank, of the par value of fourteen hundred dollars, standing in the name of Frederick G. Bromberg, agent for Susan F. Rouse ; and that she also had an unpaid mortgage for four thousand dollars, executed by Elizabeth G. Zadek and E. O. Zadek, her husband, upon the property of the said Elizabeth G. Zadek, situated in the city of Mobile, State of Alabama, on the southwest corner of Claiborne and St. Louis streets.

"It is further considered, ordered, adjudged and decreed that the said Susan F. Rouse died without having disposed of the proceeds of said sale of Hollinger's Island, or of said stock in the Peoples Savings Bank, or of said mortgage by said Elizabeth G. Zadek, and her husband, E. O. Zadek, or of the lot on Maryland Street,

or of the stock in the Cedral Mining Company, and that as to all of said property she died intestate.

"It is further considered, ordered, adjudged and decreed that the said Frederick G. Bromberg be and is hereby required to enter each of said several items of said property (not already entered) upon his inventory as executor of the estate of Susan F. Rouse, deceased.

"It is further considered, ordered, adjudged and decreed that the complainants in the bill of complaint, Theodore C. Bates, Martha Bates Brown, and Myra Eugenia Bates Bernard, are the next of kin and heirs-at-law of the said Susan F. Rouse, deceased, and as such are entitled to that portion of her estate as to which she died intestate.

"It is further considered, ordered, adjudged and decreed that the said Frederick G. Bromberg, as the executor of the estate of Susan F. Rouse, deceased, be and is hereby required to forthwith give a good and sufficient bond, conditioned as required by law, in the sum of twenty-five thousand dollars, to be approved by the register of this court.

"It is further considered, ordered, adjudged and decreed that the register of this court hold a reference and take proof, and ascertain and report to the court what amount of money the said Frederick G. Bromberg, as executor of said estate of Susan F. Rouse, deceased, received from said estate, and what money he has collected, and from what sources; also what, if any, debts of said estate are outstanding and unpaid, and whether or not there is any reason why a final settlement of said estate should not be forthwith had.

"It is further considered, ordered, adjudged and decreed that the defendants, Henry Alexander, Mollie Alexander, Frederick G. Bromberg, individually, Frederick G. Bromberg, as executor of the estate of Susan F. Rouse, deceased, Elizabeth G. Zadek, and each of them pay all the costs created by them, respectively, in said cause, and that each of them pay an equal amount of the other costs created therein, for which said several costs let execution issue."

After the rendition of this final decree the defendants, Frederick G. Bromberg, individually and as the executor of the estate of Susan F. Rouse, deceased, and Elizabeth G. Zadek, and Henry Alexander, prosecuted the present

appeal, and assign as errors the rendition of the several decrees on the demurrers to the bill, and this final decree.

PILLANS, TORREY & HANAW, OVERALL, BESTOR & GRAY, and FREDERICK G. BROMBERG, for appellant.—The rights of appellants to remove an administration of an estate from the probate into the chancery court is for the purpose of settlement and distribution and no other. *Moore v. Randolph,* 70 Ala. 575; *Gould v. Hayes,* 19 Ala. 438; *James v. Faulk,* 54 Ala. 184; *Hill v. Armistead,* 56 Ala. 118; *Teague v. Corbitt,* 57 Ala. 529; *Otis v. Dargan,* 53 Ala. 178; *Word v. Word,* 90 Ala. 85; *Jackson v. Rowell,* 87 Ala. 685; *Carroll v. Richardson, Ib.* 608; Code of 1886, §§ 2134, 2192.

In this case the letters testamentary were issued on December 18, 1891, the bill was filed March 28, 1892, less than six months after the grant of letters. If the bill was filed for the purpose of a settlement of the estate of the decedent, it was premature.—*Word v. Word,* 90 Ala. 85; *Jackson v. Rowell,* 87 Ala. 685; *Carroll v. Richardson, Ib.* 608; Code of 1886, §§ 2134, 2192.

Gifts *causa mortis* are not subject to administration. *Gaunt v. Tucker,* 18 Ala. 27; 8 Amer. & Eng. Encyc. of Law, 1352; *Goulding v. Harburg,* 27 Atl. Rep. 127. They form no part of the property to be noted in the inventory of a decedent's estate.—8 Amer. & Eng. Encyc. of Law, 1352; 3 Pom. Eq. Jur., p. 84, § 1147. It was not necessary for the appellants, Mrs. Zadek and Bromberg, to know of the gifts to them at the time they were made. Acceptance by donee is presumed even if ignorant of the fact of gift.—*Dunlap v. Dunlap,* 53 N. W. Rep. 788. Mortgage and notes, bonds and stocks, may be transferred by mere delivery.—*Ridden v. Thrall,* 26 N. E. Rep. 627. Delivery of keys to a box is a delivery of all it contains.—*Jones v. Weakley,* 99 Ala. 441; *Thomason v. Lewis,* 103 Ala. 426. There was a sufficient delivery proved by the witnesses, Mollie Alexander and Mary E. Crocker.—*Cook v. Lum,* 26 Atl. Rep. 803; *Gillespie v. Burleson,* 28 Ala. 551; 8 Amer. & Eng. Encyc. of Law, 1348; *Thomason v. Lewis,* 103 Ala. 426; Thornton on Gifts, §§ 130, 138-148, 152-168, 187, 213-221.

The right of a chancery court over the settlement of the administration of an estate does not carry with it any right to require a bond of the appellant, Bromberg,

as executor. The Code prescribes the causes, and the mode of proceeding, and the form to be resorted to in requiring bond of an executor, when the will authorizes him to act without bond. The probate court is the court to which that jurisdiction is confined.—Const. of Alabama, Art. VI, § 9 ; Code of 1886, §§ 2025, 2026. There was an equitable conversion of the proceeds from the sale of the Hollinger's Island by Bromberg ; and, therefore, Henry Alexander was entitled to the bonds which were purchased with said proceeds.—Bispham's Eq., § 312 and authorities ; Jones Corp. Bonds & Mortgages, (2d ed.), § 92 ; 1 Jones on Mortgages, (2d ed.), § 153.

The conversion when made relates back to the date of the instructions and directions (to take effect at her death), and equity will regard it as made at the time—"because it will regard as done that which ought to have been done."—Bishpam's Prin. Eq., § 307 ; Snell's Prin. Eq., §§ 169, 175, 182 ; 1 Story's Eq. 61, § 64. From the date of Miss Rouse's instructions to Bromberg the court will regard the money as bonds.—*Allen v. Watts*, 98 Ala. 384.

Thomas H. Smith and Gregory L. & H. T. Smith, *contra.*—The complainants in this bill were the sole surviving next of kin to the testator, and entitled as such to the undivided property enumerated in the 12th clause of the testatrix's will—to such property as to which she died intestate.—16 Amer. & Eng. Encyc. of Law, 703, 705, § 13 ; *Elmsley v. Young*, 2 Myl. & K. 270 ; *Redmond v. Burroughs*, 63 N. C. 242 ; *Brookfield v. Allen*, 6 Allen (Mass.) 585 ; *Harrison v. Ward*, 5 Jones Eq. (N. C.) 240 ; *Locke v. Locke*, 45 N. J. Eq. 97.

The testatrix died intestate as to the Peoples Bank stock. There was no gift *causa mortis* of such stock. *Jones v. Weakley*, 99 Ala. 444. This bank stock was, however, in the possession of Mr. Bromberg, and not one word said by Miss Rouse in regard thereto ; there was no delivery thereof without which there could be no gift.—*Jones v. Weakley*, 99 Ala. 441 ; 2 Brick. Dig., 40, § 2, p. 46, § 67 ; 8 Amer. & Eng. Encyc. of Law, 1314 and note 6 ; *Walker v. Crews*, 73 Ala. 417 ; *Brantley v. Cameron*, 78 Ala. 72.

Nor was there a gift *causa mortis* of the Zadek mort-

gage. Authorities cited above. The decree appealed from ascertained and declared that Miss Rouse died intestate as to this mortgage ; it being unpaid and collectible, it is not material whether Mr. Bromberg has possession of it or not ; the legal title is in him and he can file a bill to foreclose the mortgage.—*King v. Seales*, 45 Ala. 415 ; *Dewey v. VanDeusen*, 4 Pick. 19 ; *Griffin v. Lovell*, 42 Miss. 402.

There was no equitable conversion of the proceeds from the trustee's sale of "Hollinger's Island." The maxim that equity will treat as done, that which ought to have been done, manifestly has no application, whatever, to the case. This doctrine applies only in favor of those who have a legal right to pray that the act may be done, and has no application in favor of a simple donee ; and it is perfectly plain that whatever may have been the rights of Mr. Alexander in such bonds as Miss Rouse may have left at the time of her death, he was certainly a mere donee, and had no legal right to pray that the money belonging to Miss Rouse, should be invested in bonds, either before, or subsequent to her death, in order that it might be given to him.—6 Amer. & Eng. Encyc. of Law, 705 ; Story's Eq. Jur., § 64 ; *Waterman v. Alden*, 42 Ill. App. 294.

It is now universally the law that an executor is deemed a trustee for those on whom the law would have cast the surplus in case of complete intestacy.—2 Williams on Executors, (2d Amer. ed.), star page 1437. In the case of an executor or administrator, if any misconduct, waste or improper disposition of the assets is shown, the court will instantly interfere and appoint a receiver or require bond, or do whatever may be necessary to protect the estate.—2 Williams on Executors, (2d Am. ed.), star page 1458, *Anonymous*, 12 Ves. 5 ; *Jarvis v. White*, 6 Ves. 738 ; *Elmendorf v. Lansing*, 4 Johns. Ch. Rep. 562, s. c. 1 N. Y. Ch. Rep. 937 ; Adams' Eq. (4th Amer. ed.), 61 ; Hill on Trustees, (2d Amer. ed.), 268. The jurisdiction of the chancery court is concurrent in testamentary matters with the probate court, and the chancery court can take jurisdiction even after the proceedings have been commenced in the probate court, and having obtained jurisdiction for one purpose the chancery court will retain it for all purposes.—*Blakey v. Blakey*, 9 Ala. 394 ; *Wilson v. Crook*, 17 Ala. 60 ; *Gould v. Hayes*, 19 Ala. 438 ;

*McNeil v. McNeil*, 36 Ala. 109; *Stewart v. Stewart*, 31 Ala. 207; *Tygh v. Dolan*, 95 Ala. 271.

HEAD, J.—It is settled by the former decision in this case (98 Ala. 621) and by a subsequent adjudication (*Baker, Admr. v. Mitchell*, 109 Ala. 490), that the legatees or distributees of decedent's estate may by bill cause the administration of the estate to be removed from the probate to the chancery court, without awaiting expiration of the six months statutory exemption of the personal representative from suit, or the eighteen months prescribed for the presentation of claims.

In bills for such removals it is not necessary that details of administration be introduced for contestation and adjustment, for such matters may be adjudicated and settled on the final settlement and distribution when the estate shall become ripe for settlement. We do not say that matters of administration, properly to be involved and comprehended in the final settlement, may not arise, which are required to be determined upon pleadings and proofs. Such, for instance, as matters requiring cross bills. But, ordinary matters of detail may, without impropriety, within reasonable limitations, be brought forward in the bill for removal for special contestation and determination, upon pleadings and proofs, in advance of the final settlement. The present bill, keeping within reasonable and proper bounds, introduces matters of that character. Objections are raised to some of them, and the contention is made that because there was failure of proof as to some of such matters, the bill was not sustained and no decree could be rendered for the complainants at all. It is obvious that this contention is unsound. Thus the executor will be chargeable with only so much of the proceeds of Hollinger's Island as he was legally chargeable with, though the bill may have alleged that he was chargeable with more than that sum. We do not understand the decree to adjudge that he is chargeable with more than $8,500, but that he received more than that sum. If the amount received should be abated for any equitable cause, the court may allow the abatement on the final settlement. It is not disputed that Mr. Bromberg received more than $8,500 of said proceeds.

The decree is unquestionably correct in holding that

the testatrix died without disposing of the Peoples Bank stock, or the Zadek mortgage, or the lot on Maryland Street or the stock in the Cedral Mining Company, and that as to all ' this property she died intestate. The alleged gifts *causa mortis* to the executor and others, respectively, of these properties are without support in the evidence.

We have carefully examined the evidence, and without setting it out, and considering only that which is legal, hold that it abundantly sustains the finding of the chancellor, that the complainants are the heirs at law and distributees of the testatrix, entitled, as such, to the estate as to which she died intestate.

The requirement of the bond from the executor was within the power of the chancellor, and we think the circumstances justified its exercise.

The testatrix, in life, owned a piece of property called ''Hollinger's Island.'' The defendant, Bromberg, was her legal adviser and acted for her, in a somewhat general way, in the management of her business affairs. In consultation with him, she concluded to sell Hollinger's Island, and Bromberg was authorized to negotiate and conclude the sale which he did, he receiving the purchase money. It was thought to be a good investment of the proceeds, to put them in Alabama bonds, and Bromberg was authorized and instructed by Miss Rouse to make the investment for her. On the day he received the money, or the succeeding day, he left home for a season of vacation and rest in the East, and did not return until the day, ·and a few hours after, Miss Rouse died ; hence the investment was not made. He, however, after his appointment of executor of Miss Rouse, did invest a large portion of said proceeds in Alabama bonds, and returned the same in his inventory as belonging to the estate.

The 7th item of Miss Rouse's will was as follows : ''I give and bequeath to said Henry Alexander whatever Alabama State bonds I may have remaining at the time of my death, now amounting to seven in number of one thousand dollars each, and not used by my executor in the payment of my debts, funeral expenses and expenses of administration.'' It is contended by said Henry Alexander, on his appeal that the instruction of Miss Rouse to her agent to invest

[Bromberg v. Bates.]

said proceeds of Hollinger's Island in Alabama bonds, was an equitable conversion of said proceeds into Alabama bonds, and that, in equity, she must be deemed to have died owning the bonds which the investment would have produced, had it been made; and that said proceeds, considered as bonds, by reason of the duty of Bromberg to make the conversion, passed to him, said Alexander, by the item of the will above copied.

If it could be conceded that, had the conversion actually taken place, Alexander would have been entitled to the bonds, under said item of the will, (a concession not made), it is most clear to our minds that, under the facts, there was no element of an equitable conversion of the lands, or their proceeds, into Alabama bonds. It was nothing but a direction by the owner to her agent to invest the money in Alabama bonds, for her use, revocable by her at any moment. It was utterly incapable of enforcement, in any tribunal, at the suit of any one. It was, in effect, no more than a declaration by the owner of an intention to invest the money in bonds, never carried out. The agency was never performed, and the death of Miss Rouse revoked it. That cannot be an equitable conversion which vests no enforceable right in any one to have the conversion actually made. There must be a fixed, irrevocable legal right in some beneficiary, to have the investment or disposition made, and an irrevocable power and duty in the person charged with making it. In such a case, if the party charged with the power and duty is derelict or faithless, equity will look over the default, and consider that done which ought to have been done, in determining the rights of the parties. A mere voluntary, unenforceable agency to do the thing, revocable at any time, amounts to absolutely nothing unless and until it is done, during the continuance of the agency. As to this money, Miss Rouse died intestate.

The decree of the chancellor must be affirmed.